HAWKINS, *et al.* Lessee, *vs.* BURRESS, *et. al.*

Hawkins
vs
Burress

The omission of the words *"ill usage,"* in the certificate of the acknowledgment made by a *feme covert* grantor, invalidates the deed, notwithstanding it was stated that she made the acknowledgment *"of her own free will, and not through any threats of her said husband, or fear of his displeasure"*

A common recovery ' suffered before the act of *Nov.* 1766, *ch.* 21, which was defective for the want of a good tenant to the *præcipe,* was remedied by that act, if any of the parties was a tenant of the freehold; and the execution of a lease for a year by the tenant of the freehold with a view to the suffering such recovery, does not incapacitate the lessor from being considered as the actual tenant of the freehold within the meaning of the proviso in the said act of 1766

Where there was sufficient evidence for the jury to presume that the lands mentioned in a deed to lead the uses for suffering a common recovery and the lands mentioned in the said recovery were the same; & that a resurvey made of certain tracts of land contained no more land than was included in the original surveys

EJECTMENT on a joint demise, and on separate demises, for three undivided fourth parts (the whole to be divided into four equal parts,) of a tract or parcel of plantable land called *Trent Neck,* lying in Saint Mary's county, containing 2354 acres. The defendants took general defence, and issue was joined.

1. The plaintiff offered in evidence to the jury a patent of confirmation for the tract of land called *Trent Neck,* the land in the declaration of ejectment mentioned, (though without name in the patent,) containing 2354 acres, bearing date the 10th of September 1716, granted to *Thomas Trueman Greenfield,* on a resurvey made of six tracts of land, viz, *Trent Neck,* 600 acres; *Wedge,* 75 acres; *Refuse,* 140 acres; *Blackland,* 175 acres; *Suenton,* 100 acres, and *The Inclosure,* 110 acres, on the 10th July 1705. Also the will of the said *Thomas Trueman Greenfield* the patentee, dated the 3d of February 1730, whereby he devised to his eldest son *Thomas Trueman Greenfield,* and the heirs of his body, all that the said tract of land called *Trent Neck,* containing 2354 acres, provided he conform to the said will, and his mother's desire touching the land which descended to her by the death of her brother *Kenelm Cheseldyne;* but in case his said son *Thomas,* or any of his descendants thereafter, should molest, sue for and recover, the lands which descended to his mother, to the detriment of his son *Kenelm,* or his descendants, it was then his will that his son *Kenelm,* and the heirs of his body, should be immediately vested in a good and sure estate in fee tail, as expressed and intended, to his son *Thomas,* of in and to all the surplus land which upon resurvey was found in those tracts mentioned in the patent of confirmation called *Trent Neck,* and that his son *Thomas* should take no benefit, either by himself or the heirs of his body for ever, of the said will, &c. and in case of failure of heirs of the body of his son *Thomas,* then the lands devised to him should descend

to his son *Kenelm*, and the heirs of his body, &c. He further gave in evidence, that the said *T. T. Greenfield*, the testator, died on the 10th of February 1733, leaving six sons and two daughters, all named in the said will, of which sons *Thomas*, the devisee, was the eldest and heir at law to the testator, and *Kenelm Trueman Greenfield* the devisee, in the same will named, was second son to the said testator. That the land in the will called *Trent Neck* is the same land in the declaration and in the said patent of confirmation mentioned. That *T. T. Greenfield* (the son,) died without issue, and the said *Kenelm* survived him and entered upon the premises, and on the 21st day of March 1749, duly executed a *lease* to a certain *Robert Swann*, "for all those several tracts or parcels of land called *Trent Neck*, containing 600 acres; *Wedge*, 75 acres; *Refuse*, 140 acres; *Blackland*, 175 acres; *Suenton*, 100 acres; and *The Inclosure* 110 acres; all which said several tracts of land were reduced into one entire tract, by patent of confirmation granted to *Thomas T. Greenfield* the 10th of September 1716, and called *Trent Neck*, and containing 2354 acres of land, lying in St. Mary's county," &c. "To have and to hold all and singular the said premises, with the appurtenances, unto the said *Robert Swann*, his executors, &c. from the day next before the day of the date of these presents, for and during, and unto the full end and term of one whole year from thence," &c. "to the end and purpose that the said *Robert Swann* may be in the actual possession of all and singular the said bargained and sold land and premises, with," &c. "and may by force and virtue of the statute for transferring uses into possession," &c. "be enabled to take a grant and release of the reversion and inheritance of all and singular the said land and premises, with," &c. "to him and his heirs, to such uses and purposes as shall be thereby declared." That afterwards, on the 22d of March 1749, the said *Kenelm* and *Robert Swann*, and a certain *John Estep*, did duly sign, seal and deliver, and which was duly acknowledged and recorded, a certain deed of release in tripartite, made between

the said *Kenelm* of the first part, the said *John Estep* of the second part, and the said *Robert Swann*, of the third part, for the docking, barring and extinguishing, all estates tail, and all reversions and remainders thereon expectant or depending, of and in the lands, tenements and hereditaments, viz. *Trent Neck*, 600 acres; *The Wedge*, 75 acres; *The Refuse*, 140 acres; *Blackland*, 175 acres; *Suenton*, 100 acres; and *The Inclosure*, 110 acres; all which several tracts of land were reduced into one entire tract by patent of confirmation granted unto *Thomas Trueman Greenfield*, on the 10th September 1716, and called *Trent Neck*, containing 2354 acres, &c. "To have and to hold all and singular the said lands and tenements, hereditaments and premises, hereby granted and released, or mentioned or intended to be granted and released, with their and every of their appurtenances, unto the said *John Estep*, his heirs and assigns, to and for the use and behoof of him the said *Robert Swann*, his heirs and assigns, for ever, to the intent and purpose that he the said *Robert Swann* may be perfect tenant of the freehold of the said premises, that a common recovery may be had and suffered against him in such manner as is herein after mentioned; and for that purpose it is covenanted, &c. that before the end of the next April term, or some other ensuing term, &c. the said *Kenelm Trueman Greenfield*, one or more writ or writs of *entry sur disseisin en le post*, shall and may be brought, &c. out of his Lordship's high court of chancery, returnable, &c. in the name of the said *John Estep* as plaintiff and demandant, against the said *Robert Swann* as tenant, whereby the said *John Estep* shall demand, against the said *Robert Swann*, the said lands, &c. to which said writ the said *Robert Swann* shall appear, &c. and shall vouch to warrant the same premises to the said *Kenelm Trueman Greenfield*, who shall appear," &c. in the usual form of deeds leading uses, &c. to the proper use and behoof of the said *K. T. Greenfield*, &c. The plaintiff also offered in evidence a record of a common recovery suffered in the provincial court

MAY 1804.

Hawkins
vs
Burress

at April term 1750, pursuant to the said deed, leading the uses, &c. in the name of the said *John Estep* as demandant, against the said *Robert Swann* tenant, and *Kenelm Trueman Greenfield* vouchee, &c. in the usual form, for "one tract of plantable land, lying and being in St. Mary's county, called *Trent Neck,* containing 2354 acres, with the appurtenances," &c. And also a record of a writ of *seisin,* executed pursuant to the se' ,overy on the 15th of August 1750. He further gave evidence that the said *K. T. Greenfield,* died possessed of the said land on the 10th of June 1765, leaving two daughters, his only children and heirs, to wit, *Margaret* and *Susanna.* That the said *Margaret* intermarried with *John De Butts,* and the said *Susanna* intermarried with *George Fraser Hawkins,* who entered, &c. That *Susanna* survived her husband, and died intestate on the 1st of April 1790. That *Margaret* also survived her husband, and died intestate, and *without issue,* on the 1st of June 1798. That the said *George F. Hawkins.* and *Susanna* his wife, had the following children, to wit: *John Trueman Hawkins,* (the eldest son,) *George Fraser Hawkins, Margaret Hawkins,* and *Susanna Greenfield Hawkins.* That the said *Margaret* intermarried with *Nathaniel Washington,* and the said *Susanna* intermarried with *Henderson Sim Butler,* before this suit was brought; and that the said *George Fraser Hawkins, Nathaniel Washington,* and *Margaret* his wife, and *Henderson Sim Butler,* and *Susanna* his wife, are the lessors of the plaintiff in this suit.

The defendants then gave in evidence to the jury, that the said *John De Butts,* and *Margaret* his wife, and the said *George Fraser Hawkins,* and *Susanna* his wife, that is, the children of *Kenelm* the *devisee,* on the 29th of July 1785, executed *deeds of partition* of the said land between them. And on the same day the said *George Fraser Hawkins,* and *Susanna* his wife, executed a deed of bargain and sale to *John Trueman Hawkins,* their son, for their moiety of the said tract of land called *Trent Neck,* for which the ejectment was brought; which said last mentioned deed was ac-

knowledged as follows, to wit: "On the 29th day of July 1785, came *George Fraser Hawkins,* and *Susanna Trueman* his wife, before us, two of the justices of the peace for Saint Mary's county, and acknowledged the within instrument of writing to be their act and deed, and the land and premises therein mentioned to be the right and estate of *John Trueman Hawkins,* his heirs and assigns, for ever, after the death of the above said *George Fraser Hawkins,* and *Susanna Trueman* his wife. And the said *Susanna Trueman* being examined privately by us and out of the hearing of her said husband, acknowledged that she did the same of *her own free will, and not through any threats of her said husband, or fear of his displeasure.*" That the said *John Trueman Hawkins,* the grantee under said deed, afterwards entered and was possessed of the said land so conveyed to him, and was seised thereof as the law requires; and being so seised died intestate, leaving one son *John Hawkins,* his heir at law, an infant under the age of 21 years; and that the defendants in this cause are in possession of the said land for which the ejectment is brought, under and in virtue of the title of the said *John Hawkins.*

The plaintiff then prayed the opinion of the court and their direction to the jury, that the deed aforesaid executed by the said *George Fraser Hawkins,* and *Susanna Trueman* his wife, to the said *John Trueman Hawkins,* their son, was insufficient and inoperative to convey a fee simple in the land in the said deed mentioned to the said *John Trueman Hawkins.*

*Mason,* for the plaintiff, read the act of 1715, *ch.* 47, s. 11, to shew that material and essential words are omitted in the acknowledgment, viz. *"ill usage by."* He said, the act of 1715 contains technical expressions, which could not be departed from without fatal error as it respects *femes covert,* whose rights it intended to protect, and that the act of 1797, *ch.* 103, in remedying defective acknowledgments, saved the cases of *femes covert,* and recognised the form prescribed by the act of 1715.

*Johnson,* for defendants, contended, that as there were three deeds all executed at the same time, the acknowledgments may be all taken as making one examination of the wives. The act of 1715 prescribes a form, and the acknowledgment of the deed in question omits only the words *"ill usage by."* If there are words to supply those omitted, it will be sufficient. If the *feme covert* was actuated by her *"own free will"* to make the acknowledgment, it follows of course that there was no *"ill usage by"* her husband. The words, that *"she did it of her own free will,"* are equivalent to those omitted, and exclude the inference that she was induced thereto by *"ill usage by"* her husband. If the words of the law, which are confused, and convey no clear ideas, have been substantially complied with, it is sufficient.

*Shaaff,* for the plaintiff. This question has been decided in a variety of instances. Most of the acknowledgments by *femes covert* have been made by coercion. Before the act of 1715, *ch. 47, femes covert* could only acknowledge in court. That act positively declares, that unless the form of the law is complied with, the deed shall not operate to bar the vendor. Every word in the formula should be used. The form prescribed for bail pieces must be pursued word for word; so also as to confessions of judgments. In this case the form prescribed is not formally nor substantially complied with. An acknowledgment may be made by a *feme covert* with her *"own free will;"* yet such *"own free will"* may have been produced by antecedent *"ill usage by"* her husband. If the argument of the counsel on the other side be correct, then nothing more is necessary than to state in the acknowledgment that the *feme covert* made it of *"her own free will,"* which would be sufficient, and answer all the purposes of the form. This surely could not have been the intention of the law. It is absolutely necessary that the law and the form should be adhered to. The legislature were sedulous in guarding and protecting the interest of *femes covert.*

No latitude of construction therefore should be given to the act of 1715.

*Key*, on the same side. The act of 1715 requires that the *feme covert* should be examined *apart from* and *out of the hearing* of her husband; that she should acknowledge *"willingly and freely,"* without being induced thereto by *"fear of"* her husband, *"threats of"* her husband, *"ill usage by"* her husband, *"fear of the displeasure of"* her husband. The acknowledgment should therefore state that the *feme covert* had not been influenced or compelled to acknowledge by fear, threats, ill usage, or fear of incurring the displeasure of her husband. The act of 1797, *ch.* 103, was made to cure defective acknowledgments in a variety of deeds, where the grantor had acknowledged the *"lands"* to be the right of the grantee, but had not acknowledged the deed to be his *"act* and *deed."* The proviso of this act specially saves the rights of *femes covert*, shewing the intention of the legislature, that the strict form prescribed by the act of 1715, relative to *femes covert*, should not be dispensed with.

*Johnson*, in reply, said, he did not contend that the acknowledgment ought to bar the *feme covert*, if the law had not been *substantially* complied with. But he stated, that in this instance it had been substantially complied with. The rule of construction adopted by this court in the case of *Hoddy's Lessee vs. Harryman*, (3 *Harr. & M. Hen.* 581,) that the grantor should acknowledge the instrument to be his *"act and deed,"* and that nothing short of that acknowledgment would make the deed valid so as to pass the estate intended to be conveyed, was *reversed* by the court of appeals, not in consequence of the act of 1797, *ch.* 103, but wholly independent of that act. Here then was the opinions of the court of appeals and the legislature, that the construction given by this court was incorrect. It shews that a rigid construction ought not to be adopted. If it be true that the *feme covert* acknowledged the deed of *"her own free will,"* it

MAY 1804.

Hawkins
vs
Burress.

must exclude the idea that she was induced by "*fear*," "*threats*," "*ill usage by*," or "*fear of incurring her husband's displeasure*;" and her appearing before the justices, and their taking her acknowledgment, evince that she made the acknowledgment in the manner the law requires.

CHASE, Ch. J.  It is not for the court to say what the words of the law ought to be—they must take them as they are.  The court think the acknowledgment certified is defective, and does not divest the estate of the *feme covert*, who was in this case grantor.  They think the words "*or ill usage by*," are material; therefore, the court are of opinion, and so direct the jury, that the acknowledgment of the *feme covert* is defective, the words "*ill usage*" not being inserted in the certificate of the justices who took the said acknowledgment; and that the said deed is inoperative to pass and transfer her interest in the said land.  The defendants excepted.

*A common recovery suffered before the act of Nov. 1766, ch. 21, which was defective for the want of a good tenant to the precipe, was remedied by that act, if any of the parties was a tenant of the freehold; & the execution of a lease for a year by the tenant of the freehold with a view to the suffering such recovery, does not incapacitate the lessor from being considered as the actual tenant of the freehold within in the meaning of the proviso in the said act of 1766*

2.  The defendants then prayed the opinion of the court, and their direction to the jury, that notwithstanding the said deeds of *lease* and *release* preparatory to the execution of the said *common recovery*, and notwithstanding the said recovery, the estate tail created by the will of the said *Thomas Trueman Greenfield* remained in full force.  And further, that if the said recovery was sufficient to dock the said entail, the plaintiff was only entitled to recover three fourths of the lands actually contained within the true location of the said original tracts, which were resurveyed into the survey on which the said patent was granted.

*Martin*, (Attorney General,) for the Defendants. *Kenelm T. Greenfield*, about to dock the estate tail in *Trent Neck*, by double vouchee, by way of a common recovery, on the 21st March 1749, executed to *Robert Swann* a lease for a year for several tracts of land upon which a resurvey had been made, and called *Trent Neck*, in order to take a release to certain uses and purposes.  To make a tenant of the *precipe*, a deed of

*release* was executed on the day following; an *inden-ture tripartite*—*Kenelm T. Greenfield* of the first part, *John Estep* of the second part, and *Robert Swann* of the third part, for the same lands mentioned in the lease —"to háve and to hold all and singular the said lands and tenements," &c. "unto the said *John Estep,* his heirs and assigns," &c. To the intent that a common recovery by *Estep* against *Swann* should be had and suffered in the then provincial court. The *habendum* is to *Estep,* and one of the questions is, whether *Swann* is made a tenant of the *precipe* by the deed? The common recovery is defective for want of actual free-hold in the possession of a tenant to the *precipe*. The act of *Nov.* 1766, *ch.* 21, entitled, "An act to aid de-fective common recoveries," does not cure this defect. *K. T. Greenfield* was not actual tenant of the freehold which is distinguishable from the legal tenant; for there could be no actual tenant of the freehold in a person who had not the possession of the land itself.

*Key,* contra. The common recovery, notwithstand-ing there is no tenant of the freehold, is good. The recovery was suffered in 1750, and the act of Nov. 1766, *ch.* 21, was passed to aid any defects which may have occurred in the suffering of common recoveries. It provides "that all common recoveries heretofore suffered in the provincial court, by consent and agree-ment of the parties thereto, shall be good and availa-ble in law to all intents and purposes whatsoever, to dock and cut off any estate tail in any of the parties thereto, and bar the issue in tail, who can, could, or might claim as heir of the body or bodies of any of the parties thereto, and also to bar those in reversion or remainder, who can, could or might claim in de-fault of issue of the body or bodies of any of the par-ties to such recoveries, in the same manner as if such recoveries had been legally and formally suffered and executed, notwithstanding the *tenant to the writ in any such recovery was not tenant to the freehold at the time of judgment rendered,* or any other defect in drawing, suffering or executing any of the said recoveries; pro-

MAY 1804.

Hawkins
vs
Burress

vided that some one or more of the parties to such recovery, at the time of such judgment, was *actual tenant of the freehold* in the manors, lands, &c. recovered, and the persons, or some of them, joining in such recovery, had a sufficient estate and power to suffer the same." This act clearly takes in the present case, and aids any defect which may be in the proceedings. The lease, release and recovery, are all to be taken together as one act. The parties to the proceedings had a sufficient estate and power to suffer the recovery. But the deed is good independent of the act of assembly, as may be shown by the authorities. The *habendum* in the deed does not control the premises. The freehold is not in abeyance by a lease for a year. The fee and freehold are in the person who executes the lease for a year. The lease for a year does not take away the freehold from the lessor. 2 *Blk. Com.*

*Martin,* (Attorney General,) in reply. The act of 1766 was intended to aid defective common recoveries only in those cases where the lands had been sold—See the *third section* of the act. Who was tenant at the time of suffering the recovery? Not *Kenelm T. Greenfield.* He had executed a lease whereby he was out of possession, and the release states the *actual* possession to be in another. It is an inheritance in reversion in the lessor, and not in *actual* possession. *K. T. Greenfield,* by the law of 1766, to aid the recovery must be *actual* tenant of the freehold at the time of the judgment; whereas he had only an inheritance in reversion, and the act of 1766 does not aid this recovery.

CHASE, Ch. J. The court are satisfied that the act of *November* 1766, *ch.* 21, embraces the case before the court, and unless this recovery is aided by that act, no recovery has been aided by it. A common recovery is a mode of conveyance. The deeds of lease, release and common recovery, are all to be considered as one act. The intention of the parties was to create a tenant to the freehold; but the deed

being inartificially drawn, did not do so.  Supposing the objection to the deed to be good, the freehold rested in *K. T. Greenfield,* who was a party to the conveyance, and unless a case like this is provided for, the act is nugatory.

The court are of opinion that the common recovery in this case is good and available in law to dock the estate tail created by the will of *Thomas Trueman Greenfield.*  The defendants excepted.

3. *Martin,* (Attorney General,) for the defendants. The next question is, whether *Trent Neck,* the original, or *Trent Neck,* the resurvey, is conveyed by the deeds of lease and release, and common recovery? The ejectment is brought for different land than that mentioned in the common recovery; and the plaintiff can only recover three fourths of the land for which the common recovery was suffered, docking the estate tail.

*Mason,* contra.  It was heretofore the practice of the land office to permit persons to take up land by natural calls, without measuring the distance, by which more land was taken up than was intended to be granted, or than the party paid for.  This gave rise to the Lord Proprietary's instructions prohibiting more than one boundary or call, and an attempt was made by the proprietary to induce persons holding by the former mode to resurvey and pay for the surplus land included in their former grant, but no court had ever questioned the grantee's right to such surplus whether he resurveyed his lands or not.  The case of *Thomas T Greenfield* was thus circumstanced, as may be seen by reading of the grant, and no land is included in the grant of confirmation but that included in the original tracts upon which the resurvey was made, being the same lands included in the deeds of lease and release.  The lease and release convey the tract of land called *Trent Neck,* the resurvey, and the common recovery was suffered for *Trent Neck,* containing 2354 *acres,* and if the lease and release had been lost, the act of assembly cured the defect; therefore the recital in the lease is out of the question.

MAY 1804.

Hawkins
vs.
Burrow

Where there was sufficient evidence for the jury to presume that the lands mentioned in a deed to lead the uses for suffering a common recovery, and the lands mentioned in the said recovery, were the same and that a resurvey made of certain tracts of land, contained no more land than was included in the original surveys

*Shaaff,* on the same side. The common recovery was suffered for *Trent Neck,* the resurvey. The court has said that the lease and release and common recovery form one entire act. The act of assembly aids the defect if the deeds do not convey the resurvey. The lease and release convey all the lands therein mentioned, and *Trent Neck,* the resurvey, is mentioned in the deeds.

*Key,* on the same side. Suppose there were no lease or release on record—would not the common recovery be aided by the act of assembly? The deeds were intended to make a tenant to the *precipe,* which the aiding act dispenses with.

*Martin,* Attorney-General, in reply. The lease and release conveyed the land by specification, and the recital of *Trent Neck* could not enlarge the quantity beyond the extent of the specified land. The recital, that the lands had been resurveyed, does not of necessity convey the surveyed tracts, and unless the limits of the small tracts contain the same quantity the whole is not conveyed. The lease, release, and common recovery, are all to be taken together, and must take in and relate to what is contained in the deeds, and to the recovery. 2 *Burr.* 1134.

CHASE, Ch. J. The court are of opinion, that there is sufficient evidence to induce the jury to presume that the lands conveyed, and the lands in the common recovery, were the same, and that the resurvey contains no more land than the original tracts.

The defendants excepted. Verdict and judgment for the plaintiff. The defendants *appealed to the Court* of Appeals. But the case was compromised, and the appeal was *dismissed* at June term, 1806.